UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DESTIN FISHING FLEET, INC.
CHARTER BOAT SUNRISE, INC.,
CHARTER BOAT SEASCAPE,
INC., and FIRST LIGHT
ENTERPRISES, INC., Individually
and on behalf of themselves and all
others similarly situated

     Plaintiffs

Versus

BP, plc, BP PRODUCTS NORTH
AMERICA, INC., BP AMERICA, INC.,
TRANSOCEAN, LTD.,
TRANSOCEAN OFFSHORE
DEEPWATER
DRILLING, INC., TRANSOCEAN
DEEPWATER,
INC., HALLIBURTON ENERGY
SERVICES, INC.
AND CAMERON INTERNATIONAL
CORPORATION 17 f/k/a COOPER
CAMERON
CORPORATION
     Defendants

CASE NO.
_____

JURY DEMAND

CLASS ACTION

**CLASS ACTION COMPLAINT**

Plaintiffs Destin Fishing Fleet, Inc. and Charter Boat Sunrise ("Plaintiffs"), individually and as representatives of the class defined herein (the "Class"), bring this action against the defendants identified below ("Defendants"), and allege as follows:

**INTRODUCTION**

1.    This is a class action, brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, to recover damages suffered by Plaintiffs and the Class members as a result of the oil spill that resulted from the explosion and fire aboard, and subsequent sinking of the oil rig

Deepwater Horizon on April 20, 2010, at about 10:00 p.m. CST on the outer Continental Shelf, off the U.S. coast, in the Gulf of Mexico.

## PARTIES

2. Plaintiff Destin Fishing Fleet, Inc. ("Fleet"), is an incorporated body of fisherman who reside in and do business in Destin, Florida, within this District. This Plaintiff is a representative corporation of specific fisherman who own an interest in and dock their boats at the Destin Fleet Fishing Marina in Destin, Florida, through their stock ownership in the Fleet. The Fleet owns both real and riparian interests in land in a long-term submerged land lease on the Destin Harbor in Okaloosa County, Florida.

3. Plaintiff Charter Boat Sunrise, Inc. ("Sunrise") is indicative and representative of most commercial charter boat businesses in the Destin, Florida in the sense that it is a corporate owner of a boat operated by a sole stockholder. That stockholder is also the boat's licensed Captain. The boat is operated for the purpose of providing services to vacationers and for commercial fishing enterprises all operating out of Destin, Florida. Sunrise is a Florida corporation doing business in Okaloosa County, Florida within this District. Its Captain is Charles K. "Kelly" Windes. Captain Kelly Windes is President of the Fleet.

4. Plaintiff Charter Boat Seascape, Inc. ("Seascape") is indicative and representative of most commercial charter boat businesses in the Destin, Florida in the sense that it is a corporate owner of a boat operated by David Windes who is also the boat's licensed Captain. The boat is operated for the purpose of providing services to vacationers and for commercial fishing enterprises all operating out of Destin, Florida. Seascape is a Florida corporation doing business in Okaloosa County, Florida within the District. Its Captain is David Windes. Captain David Windes is President of the Destin Fishing Co-op, and his boat and his personal and corporate claim is indicative of the more than 100 Captains

and owners within the Destin Fishing Co-op.

5. Plaintiff First Light Enterprises, Inc. ("First Light") is indicative and representative of most commercial charter boat businesses in the Destin, Florida in the sense that it is a corporate owner of a boat operated by its stockholder who is also the boat's licensed Captain. The boat is operated for the purpose of providing services to vacationers and for commercial fishing enterprises all operating out of Destin, Florida. First Light is a Florida corporation doing business in Okaloosa County, Florida within this District. Its Captain is Steve Haeusler. Captain Haeusler is Vice-President of the Fleet.

6. Plaintiffs earn their livelihoods chartering recreational fishing excursions and other commercial enterprises related to the fishing and vacation industries on the coast of and in the waters of Florida in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. §133 1 (e)) (the "Coastal Zone"). As a result of the events described in this complaint, they have suffered damages that are more fully described below.

7. Defendants are as follows:

(a) Transocean, Ltd., ("Transocean, Ltd.") a foreign corporation doing business in the State of Florida and within this district;

(b) Transocean Offshore Deepwater Drilling, Inc. ("Transocean Offshore"), a foreign corporation doing business in the State of Florida and within this district;

(c) Transocean Deepwater, Inc. ("Transocean Deepwater"), a foreign corporation doing business in the State of Florida and within this district;

(d) BP, plc ("BP"), a foreign corporation doing business in the State of Florida and within this district;

(e) BP Products North America, Inc. ("BP Products") a foreign corporation doing business in the State of Florida and within this district;

(f) BP America, Inc. ("BP America"), a foreign corporation doing business in the State of Florida and within this district;

(g) Halliburton Energy Services, Inc. ("Halliburton"), a foreign corporation doing business in the State of Florida and within this district; and

(h) Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron"), a foreign corporation doing business in the State of Florida and within this district.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this class action pursuant to (1) 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and it is a class action brought by citizens of different states.

9. Venue in this district is proper under 28 U.S.C. § 1391(a), because a substantial part of events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL ALLEGATIONS

10. Transocean, Ltd., Transocean Offshore and Transocean Deepwater (collectively "Transocean") are the owners and/or operators of the Deepwater Horizon, a semi-submersible mobile drilling rig, which was performing completion operations for BP, BP Products and BP America on the outer Continental Shelf, at the site from which the oil spill now originates, on April 20, 2010.

11. BP, BP Products and BP America (collectively "BP") are the holders of a lease granted by the Minerals Management Service that allows BP to drill for oil and perform oil-production-related operations at the site of the and oil spill, and on April 20, 2010 operated

4

the oil well that is the source of the oil spill.

12. Upon information and belief, Cameron manufactured and/or supplied the Deepwater Horizon's blow-out-preventors ("BOP's") that failed to operate upon the explosion, which should have prevented the oil spill. The BOP's were defective because they failed to operate as intended.

13. Halliburton was engaged in cementing operations of the well and well cap and, upon information and belief, improperly and negligently performed these duties, increasing the pressure at the well and contributing to the fire, explosion and resulting oil spill.

14. At all times material hereto, the Deepwater Horizon was owned, manned, possessed, managed, controlled, chartered and/or operated by Transocean and/or BP.

15. The fire and explosion on the Deepwater Horizon, its sinking and the resulting oil spill were caused by the negligence and/or gross negligence of Defendants, which renders them liable jointly, severally and *in-solido* to Plaintiffs and the Class members for all their damages.

16. The injuries and damages suffered by Plaintiffs and the Class members were caused by Defendants' violations of numerous statutes and regulations, including, but not limited to, statutes and regulations issued by OSHA and the United States Coast Guard, including the requirements to test the sub-sea BOP's at regular intervals.

17. Defendants knew of the dangers associated with deep water drilling and failed to take appropriate measures to prevent damage to Plaintiffs, the Class members, Florida's and the Gulf of Mexico's marine and coastal environments and estuarine areas, and the Coastal Zone, where Plaintiffs and the Class members work and earn a living.

18. The spilled oil would not simply evaporate off of the surface of the water and is causing dangerous environmental contamination of the Gulf of Mexico and its shorelines,

5

threatening Florida's sensitive wetlands and estuarine areas.

19. The oil spill and the contamination have caused and will continue to cause loss of revenue to persons (and businesses) who are being prevented from using Gulf of Mexico and Florida's Coastal Zone for diverse activities, including work and to earn a living.

20. There are many other potential affects from the oil spill that have not yet become known, and Plaintiffs reserve the right amend this Complaint once additional information becomes available.

## CLASS DEFINITION

21. Plaintiffs bring this action on behalf of themselves and all others similarly situated, who are members of the following Class:

> All Florida residents who own, operate and/or manage charter fishing or marina operations and derive income from the Florida "Coastal Zone," as that term is defined in 43 U.S.C. §1331(e), and who have sustained any loss and/or damages as a result of the Deepwater Horizon explosion and the resulting oil spill. Excluded from the Class are the officers and directors of any of the Defendants, any judge or judicial officer assigned to this matter and his or her immediate family, and any legal representative, successor, or assign of any excluded persons or entities.

## CLASS ACTION ALLEGATIONS

22. Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure is appropriate.

23. The proposed Class is so numerous that joinder is impractical. The disposition of the claims asserted herein through this class action will be more efficient and will benefit the parties and the Court.

24. There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class members and include, but are not limited to, the following:

    a.    Whether Defendants caused and/or contributed to the fire, explosion and oil spill;

    b.    Whether Defendants' actions were negligent and/or grossly negligent;

    c.    Whether the fire, explosion and oil spill have caused environmental or other damage; and

    d.    The amount of damages Plaintiffs and the Class members should receive in compensation.

25.    Plaintiffs and the Class members have suffered similar harm as a result of Defendants' actions.

26.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class because their interests do not conflict with the interests of the Class members they seek to represent. Plaintiffs have no claims antagonistic to those of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions and maritime and environmental litigation.

27.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Class members is impracticable. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to this Court in which individual litigation of thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, and an inequitable allocation of recovery among, those with equally meritorious claims. Individual litigation increases the expenses and delay to all parties and the court system in resolving the legal and factual issues common to all claims related to the Defendants' conduct alleged herein. By contrast, a class action presents far fewer management difficulties and provides the benefit of a single adjudication,

economies of scale, and comprehensive supervision by a single court.

28. The various claims asserted in the action are also certifiable under the provisions of Rules 23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure because:

a. The prosecution of separate actions by thousands of individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, thus establishing incompatible standards of conduct for Defendants;

b. The prosecution of separate actions by individual Class members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members who are not parties to such adjudications and would substantially impair or impede their ability to protect their interests; and

c. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I

## NEGLIGENCE

29. Plaintiffs, on behalf of themselves and the Class members, repeat, reiterate, and reallege each and every allegation set forth above.

30. The fire, explosion and resulting oil spill was caused by the concurrent negligence of the Defendants.

31. Defendants owed a duty of reasonable care to Plaintiffs and the members of the Class in the operation and maintenance of Deepwater Horizon.

32. Defendants breached that duty to use reasonable care by:

8

a. Failing to properly operate the Deepwater Horizon;

b. Operating the Deepwater Horizon in such a manner that a fire and explosion occurred onboard, resulting in an oil spill;

c. Failing to properly inspect the Deepwater Horizon to assure that its equipment and personnel were fit for their intended purpose;

d. Acting in a careless and negligent manner without due regard for the safety of others;

e. Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon which, if they had been so promulgated, implemented and enforced, would have averted the fire, explosion, sinking and oil spill;

f. Operating the Deepwater Horizon with untrained and unlicensed personnel;

g. Inadequate and negligent training and hiring of' personnel;

h. Failing to take appropriate action to avoid or mitigate the accident;

i. Negligent implementation of policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

j. Failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;

k. Failing to timely warn;

l. Failing to timely bring the oil release under control;

m. Failing to provide appropriate accident prevention equipment;

n. Failing to observe and read gauges that would have indicated excessive pressures in the well;

o. Failing to appropriately react to danger signs;

p. Providing BOP's that did not work properly;

9

q. Conducting well and well cap cementing operations improperly;

r. Acting in a manner that justifies imposition of punitive damages; and

s. Such other acts of negligence and omissions as will be shown at the trial of the matter; all of which acts are in violation of the laws of Florida and Federal law applicable on the outer Continental Shelf.

33. The negligent actions of Defendants proximately caused damage to Plaintiffs and the Class members, which entitles them to adequate compensation in amounts determined by the trier of fact.

## COUNT II

## GROSS NEGLIGENCE

34. Plaintiffs, on behalf of themselves and the Class members, repeat, reiterate, and reallege each and every allegation set forth above.

35. Defendants were grossly negligent in their operation and maintenance of Deepwater Horizon, which proximately caused damages to the Plaintiffs and the Class.

36. As such, Plaintiffs are entitled to adequate compensation in amounts determined by the trier of fact.

## COUNT III

## FLORIDA POLLUTANT DISCHARGE PREVENTION AND CONTROL ACT
## FL. STAT. ANN. § 376.011 et. seq.

37. Plaintiffs, on behalf of themselves and the Class members, repeat, reiterate, and reallege each and every allegation set forth above.

38. The Pollutant Discharge Prevention and Control Act prohibits the discharge of pollutants into or upon any coastal waters, estuaries, tidal flats, beaches, and lands adjoining the seacoast of the State of Florida. Fl. Stat. Ann. §376.041.

39.     Any person may bring a cause of action against a responsible party for damages resulting from a discharge or other condition of pollution.  In any such suit, it shall not be necessary for the person to plead or prove negligence in any form or manner, but only to plead or prove the fact of the prohibited discharge or other pollutive condition and that it occurred.  Fl. Stat. Ann. § 376.205.

40.     The Pollution Discharge Prevention and Control Act imposes liability upon a responsible party for all damages for any destruction to or loss of any real or personal property as the direct result of the discharge of a pollutant.  Fl. Stat. Ann. § 376.12, § 376.031(5).

41.     The Coast Guard has named BP as the responsible party.  Therefore, BP is liable pursuant to Section 376.12 for all the damages that result from the oil spill.

42.     In addition to the damages recoverable as a result of the oil spill, an affected party may be awarded costs of litigation, including reasonable attorney's and expert witness fees.  Fl. Stat. Ann. § 376.205.

43.     As such, Plaintiffs and the Class are entitled to all damages they have suffered at an amount to be proven at trial.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class members demand judgment against Defendants, jointly, severally as follows:

a.      An order certifying the Class for the purpose of going forward with any one or all of the causes of action alleged herein; appointing Plaintiffs as Class Representatives; and

appointing undersigned counsel as counsel for the Class;

  b. Economic and compensatory damages in amounts to be determined at trial, but not less than the $5,000,000.00 required by the Class Action Fairness Act which establishes one of this Court's bases of jurisdiction to hear this case;

  c. Punitive damages;

  d. Pre-judgment and post-judgment interest at the maximum rate allowable by law;

  e. Attorney's fees and costs of litigation, including expert witness fees;

  f. Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate; and

  g. A trial by jury as to all Defendants.

         Respectfully submitted,

         **CHESSER & BARR, P.A.**


         /s/ D. Michael Chesser
         D. Michael Chesser
         1201 Eglin Parkway
         Shalimar, FL 32579
         Phone: 850.651.9944
         Fax: 850.651.6084

         M. Clay Ragsdale
         **RAGSDALE LLC**
         517 Beacon Parkway West
         Birmingham, AL 35209
         Phone:  205.290.6800
         Fax:  205.290.6810

         Scott E. Poynter, AR Bar # 90077
         Jack T. Patterson, II, AR Bar # 95012
         Christopher D. Jennings, AR Bar # 2006306
         Gina M. Dougherty, AR Bar # 98168
         **EMERSON POYNTER LLP**

The Museum Center
500 President Clinton Ave., Ste. 305
Little Rock, AR 72201
Phone: (501) 907-2555
Fax: (501) 907-2556

John G. Emerson, TX Bar # 06602600
**EMERSON POYNTER LLP**
830 Apollo Lane
Houston, TX  77058
Phone:  (281) 488-8854
Fax: (281) 488-8867